UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                                    CASE NO. 8:25-cr-153-WFJ-AAS

**CARLOS ANTONIO LEON**, and
**LUIS FERNANDO AGUIRRE MARIN**,

Defendants.

### ORDER DENYING MOTIONS TO SUPPRESS

The Court held a hearing on March 30, 2026, taking evidence and argument concerning the motions to suppress filed by defendants. Dkts. 61, 64. The Government called several witnesses, including the Task Force Officer ("TFO") and Florida Highway Patrol officers involved in the highway stop. *See* Dkt. 82. The stop uncovered about 60 pounds of methamphetamine, being carried in a tote on the backseat of the pickup truck owned by passenger Leon and driven by Aguirre Marin. Also found in the front console was a loaded firearm that constitutes the basis for an 18 U.S.C. 924(c) charge here. The issues at the hearing were probable cause for the vehicle stop, the frisk of Leon at the stop, and the subsequent canine alert. The motions are denied.

The Court here need not repeat all that occurred at the hearing, but there was probable cause aplenty for the traffic stop, and in any event the stop was not unreasonably delayed prior to the dog alert. The Court found credible the

government witnesses who testified at the hearing, and their testimony was buttressed by videos of the stop admitted.

First, the Task Force Officer had independent probable cause to stop the pickup truck, and arrest its owner Leon, because Leon had reportedly sold two kilograms of methamphetamine to the TFO's informant.   This alleged recorded sale in February 2025 will be offered as part of the Count I conspiracy.

As a result of this direct sale, and prior intelligence about Leon being the source of an earlier sale, the TFO had secured a federal tracking warrant emplaced on Leon's pickup truck on March 18, 2025.   This tracker showed that on March 21, 2025, Leon's truck departed Plant City, Florida shortly after midnight, drove directly to the area near the Atlanta airport, stopped very briefly, and then immediately returned to Florida, heading South.

Although the TFO already possessed probable cause to stop Leon in his truck and arrest him for the alleged prior two-kilo sale, the TFO arranged for the Florida Highway Patrol to conduct an independent stop once the truck, southbound, reached the Sumter County, Florida area on Interstate 75.   The TFO was surveilling the stop in the general area of the highway at the time.   The FHP knew about the prior history, generally, based upon an early debriefing from the TFO.   And they knew of the tracking location from the TFO who was sharing it with them in real time.

The FHP trooper's dash cam video shows that Leon's pickup truck prior to the stop was tailgating a dump truck. The window tint can be seen in the video, and to the naked eye it appears fairly opaque.

Immediately at the stop, the FHP trooper learned that driver Aguirre Marin had a canceled Maryland driver's license. And Leon, the owner and passenger of the truck, could not provide proof of vehicle insurance. After a brief delay Leon phoned his wife and obtained an email or text copy of insurance from his wife. The trooper also saw a large plastic tote on the back seat which he viewed as suspicious and consistent with what the TFO debriefed him about. (This contained the 60 lbs. of methamphetamine). The trooper was taking down information, and writing proper tickets for tailgating, canceled license, and (after using a light meter) excessive window tint. *See* Fla. Stat. 316.2953. The trooper also could have cited Leon for failure to have proof of insurance in the vehicle. All of these were proper, real civil or criminal traffic offenses proven by the evidence and pursued without delay by this trooper.

While the trooper was gathering information and writing these tickets an FHP trooper arrived with the canine. The dog arrived about 14.5 minutes after the first trooper had illuminated his "wig-wag lights" on the highway and had begun the pull-over of the pickup truck. The stop was not in any way delayed for arrival of the

canine.   The first trooper was not dilatory, and acted reasonably and diligently in assessing the situation and addressing the three violations he was working on.

The dog did not delay.   The video shows two dog alerts on the truck.   The Court credits the bona fides of the dog handler, and found all the testimony of each witness to be credible.   The dog can be seen, briefly and somewhat unclearly, alerting on the right front of the truck.   And on the higher pass around (there were two, apparently standard passes—one lower and one higher) the dog alerted on the passenger window, which was partially open, and then energetically leaped into the truck where the tote contained the methamphetamine.   This alert was quite clear and is not reasonably in dispute.   The Court knows methamphetamine to have a significant, discernable odor.   This methamphetamine was in multiple plastic kitchen-type bags, not vacuum sealed or covered in an odor-masking agent of any sort.

As noted, the second dog alert was quite clear on the video.   The defense spent some time addressing the training records and handling of the subject dog. Nothing on that topic impairs this stop, the dog's handling and behavior, or the alerts.

Officers may stop a car "if, under the totality of the circumstances, from the collective knowledge of the officers involved in the stop," they had reasonable suspicion or probable cause that the car was used, or was about to be used, in a crime. *See United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (citation

modified).    If the officers had "maintained at least a minimal level of communication during their investigation," then courts "aggregate the officers' knowledge at any given moment" to determine whether reasonable suspicion or probable cause existed.  *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985); *see United States v. Esle*, 743 F.2d 1465, 1476 (11th Cir. 1984) (finding similar), *overruled on other grounds by United States v. Blankenship*, 382 F.3d 1110, 1122 n.23 (11th Cir. 2004).   Here, there was plenty of probable cause, and even if considered only a *Terry* stop, the delay prior to the dog alert was short and reasonable.

Leon also asserts a Fourth Amendment violation when the FHP trooper ordered that he alight from the car for a frisk.   This was after probable cause already existed for the stop, albeit before the canine approached.   Prior knowledge of Leon's recent drug trafficking would certainly support a frisk (even a search), and the trooper was aware the suspects carried a gun in the console, as well as were engaged in a highly suspicious road trip, for which no innocent reason can reasonably be conjured.   A frisk at this traffic stop on I-75 was appropriate.

Police officers conducting a traffic stop may take such steps as are reasonably necessary to protect their personal safety, including having the driver step out of the car in a routine stop.  *See Johnson v. Nocco*, 91 F.4th 1114, 1123 (11th Cir. 2024) (holding that an officer can order a passenger out of car during traffic stop).   That

5

can include a frisk if the officer has "reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). "Reasonable suspicion that an individual is armed and dangerous exists so long as a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Bishop*, 940 F.3d 1242, 1248 (11th Cir. 2019) (citation modified).

Factors such as a passenger's suspected drug activity and admitting to having a firearm can further justify a frisk. *See id.* at 1248–49 (sustaining frisk because, among other things, a woman with heroin told officer that she was going to the passenger's house); *United States v. Murray*, 659 F. App'x 1023, 1026 (11th Cir. 2016) (finding frisk justified by, among other things, passenger's statement that he had gun). Like the passenger in *Bishop*, Leon had been identified as connected to drug trafficking, and, as did the passenger in *Murray*, Leon admitted to having a gun. Nothing in this case makes the roadside frisk of Leon unreasonable.

The motions are denied.

**DONE AND ORDERED**, at Tampa, Florida, on April 2, 2026.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record

6